```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

LORI ANN KENYON,                     :
                                     :
     Plaintiff,                      :
                                     :
v.                                   :    CASE NO. 3:15CV1414(DFM)
                                     :
CAROLYN W. COLVIN,                   :
COMMISSIONER OF SOCIAL SECURITY,     :
                                     :
     Defendant.                      :
```

RULING ON PENDING MOTIONS

Plaintiff, Lori Ann Kenyon, seeks judicial review of the denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Currently

---

[1] Plaintiff filed applications for DIB and SSI on February 14, 2012, alleging a disability onset date of August 31, 2008. Her applications were denied initially and upon reconsideration. (R. 236.) An Administrative Law Judge ("ALJ") held a hearing on December 13, 2013.
    The ALJ found at step 1 that plaintiff has not engaged in substantial gainful activity since her alleged onset date. (R. 238.) At step 2, the ALJ found that plaintiff has the following severe impairments: sarcoidosis; obesity; osteoarthritis; generalized anxiety disorder; and major depressive disorder. (R. 239.) She found at step 3 that plaintiff's conditions do not meet or medically equal a listed impairment. (R. 239.) She determined that plaintiff retains the residual functional capacity ("RFC") to perform light work, except that plaintiff is limited to simple routine, repetitive work and only occasional interaction with the general public. (R. 241.) At step 4, the ALJ determined that plaintiff is unable to perform her past relevant work. (R. 249.) At step 5, considering plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform. (R. 249.) She thus concluded that plaintiff is not disabled within the meaning of the Social Security Act. (R. 250.) Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her request for review on

pending are plaintiff's motion to reverse the decision of the Commissioner of Social Security ("Commissioner") (doc. #19) and defendant's motion to affirm the decision of the Commissioner. (Doc. #20.)  Counsel filed a statement of facts and medical chronology, which I incorporate by reference.[2]  (Doc. #19-2.)  For the following reasons, plaintiff's motion is DENIED and defendant's motion is GRANTED.[3]

I. Legal Standard

The standards for determining an individual's entitlement to DIB and SSI, the Commissioner's five-step framework for evaluating claims, and the district court's review of the final decision of the Commissioner are well-settled.  I am following those standards, but do not repeat them here.

II. Discussion

Plaintiff makes three arguments.  She contends that the ALJ erred by finding that (a) her migraine headaches are not a severe impairment; (b) her depression does not meet or medically

---

July 31, 2015. (R. 1-6.)  Plaintiff timely appealed to this court.

[2]Plaintiff filed a proposed stipulation of facts.  (Doc. #19-2.)  Defendant adopts those facts, and adds a summary of the opinions of the state agency consultants, treating sources, and plaintiff's statements.  (R. 20-1, pp. 2-4.)  In her reply brief, plaintiff includes additional statements of her activities of daily living.  (Doc. #21.)

[3]This is not a recommended ruling; the parties consented to the jurisdiction of a magistrate judge. (Doc. #15); see 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

equal a listed impairment; and (c) that she has the RFC to perform light work. I consider each argument in turn.

A. <u>Step Two Determination</u>

Plaintiff argues that the ALJ erred at step 2 by not finding her migraine headaches to be severe. Plaintiff points to a handful of record citations to support her contention that her migraines are severe. In August 2005, she reported on an "Intake Assessment/Psychosocial History" form at Integrated Behavioral Health that she has suffered from migraines for 20 years. (R. 738.) In March 2006, plaintiff was taking Percocet to control her migraines. (R. 793.) Plaintiff asserts that her migraines caused her to miss medical appointments in 2006, and in part, caused her to lose her job in January 2007 after missing too many days of work. (R. 760, 773, 775, 781, 790, 796.) Plaintiff was treated at the emergency room in January and March 2009, September 2010, October 2011, and September 2013 for complaints of migraines, among other symptoms.[4] (R. 1077-81, 1071-75, 1015-45, 1494-1507, 2520.) In August 2013, plaintiff reported to her primary care physician that she was having migraine headaches almost every day. (R. 2604.) Plaintiff

---

[4]The record shows that plaintiff's September 2010 hospitalization was due to a "sudden onset of chest pain that radiated into the left arm with nausea and vomiting." (R. 1020.) During her overnight hospitalization, plaintiff "started to develop headaches." (R. 1020.) In October 2011, plaintiff presented at the emergency room complaining of severe abdominal pain and vomiting, as well as a migraine. (R. 1497.)

3

argues that the record supports a finding that her migraines are severe in that they have caused her to take medication, seek treatment in the emergency room, miss medical appointments, and lose a job.

"At step two of the sequential evaluation process, the claimant has the burden of providing medical evidence which demonstrates the severity of her condition." Burgos v. Astrue, No. 309-CV-1216 (VLB), 2010 WL 3829108, at *3 (D. Conn. Sept. 22, 2010). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The impairment also must meet the duration requirement. To be severe, an impairment must have lasted or be expected to last for a continuous period of at least 12 months, or be expected to result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). "[A] diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities." Durgan v. Astrue, No. 12-CV-279 (DNH/CFH), 2013 WL 1122568, at *3 (N.D.N.Y. Feb. 19, 2013).

Other than plaintiff's subjective complaints of migraines, which do not constitute medical opinion evidence, Dailey v. Comm'r of Soc. Sec., No. 514CV1518 (GTS/WBC), 2016 WL 922261, at

*5 (N.D.N.Y. Feb. 18, 2016) ("Subjective complaints can be supported by objective medical evidence and findings; however, subjective complaints, by their very nature, cannot constitute objective medical evidence"), plaintiff points to only six notations in the nearly 2700 page record showing treatment for migraine headaches. At the time of her hearing, plaintiff testified that she was experiencing two to three migraines a month, but that her injectable medication was effective "[m]ost of the time." (R. 449, 451.) Substantial evidence supports the ALJ's finding that plaintiff's migraines are not severe. There is no error here.[5]

### B. Step Three Determination

Plaintiff next argues that the ALJ erred at step three by failing to find that her depression satisfies the paragraph "C" criteria of Listing 12.04 (depressive, bipolar and related disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1.

To meet the paragraph C criteria for Listing 12.04, plaintiff must show a "[m]edically documented history of a

---

[5] Even if the ALJ had erred in determining that plaintiff's migraine headaches are not severe, any error is harmless because she continued the sequential analysis and considered plaintiff's non-severe impairments, including migraine headaches, when making her RFC determination. See, e.g., Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) ("At step two, the ALJ identified other 'severe impairments' . . . and therefore proceeded with the subsequent steps. And, in those subsequent steps, the ALJ specifically considered [plaintiff's non-severe impairments]. Because these conditions were considered during the subsequent steps, any error was harmless.").

5

chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities," plus one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.04(C).  "[T]he burden is on the claimant to present medical findings that show his or her impairments match a listing or are equal in severity to a listed impairment."  Stephens v. Colvin, 200 F. Supp. 3d 349, 358 (N.D.N.Y. 2016).

Plaintiff contends that the record shows repeated episodes of decompensation of extended duration.  The term "repeated episodes of decompensation" is defined as three episodes within one year, or an average of once every four months, each episode lasting for at least two weeks.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, ¶ 12.00(C)(4).  The Listing also provides that if the claimant has "experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, [the Commissioner] must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may

be used to substitute for the listed finding in a determination of equivalence." Id.

Here, the ALJ considered plaintiff's episodes of decompensation as follows:

> [T]he claimant has experienced one to two episodes of decompensation . . . . The claimant's history of multiple psychiatric hospitalizations shows that she has experienced episodes of decompensation; however, the episodes have been controlled and do not appear to have been of extended duration of two weeks or longer . . . . [T]he medical evidence fails to establish the presence of the 'paragraph C' criteria.

(R. 240.) Plaintiff has not identified any episodes of decompensation lasting at least two weeks. In the absence of episodes of extended duration, the ALJ properly assessed the evidence of record and used her judgment when determining that plaintiff has not met the paragraph C criteria of Listing 12.04.

   III. RFC Determination

Lastly, plaintiff argues that the ALJ's RFC determination that plaintiff can perform light work[6] is not supported by substantial evidence.

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to

Plaintiff bears the burden of proving her RFC.  See 20 C.F.R. §§ 404.1512(c); 416.912(c); Staggers v. Colvin, No. 3:14-CV-717 (JCH), 2015 WL 4751123, at *4 (D. Conn. Aug. 11, 2015) ("[T]he claimant bears the  burden of proving her RFC"); Hogan v. Astrue, 491 F. Supp. 2d 347, 356 (W.D.N.Y. 2007) ("[T]he only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience.  That shift does not place on us the burden of proving RFC.")

When reaching her RFC determination, the ALJ discussed the evidence of record, including plaintiff's own statements and the medical opinion evidence, over nine single-spaced pages.  She explained her ultimate conclusion as follows:

> In summary, the objective medical evidence of record shows that the claimant experiences limitations caused by sarcoidosis, obesity, osteoarthritis, generalized anxiety disorder, and major depressive disorder.  The evidence shows that the claimant's mental health issues could be related to medication for her other health problems, as well as abuses of medications. In any case, the claimant has been inconsistent with her treatment regimen, and the ongoing progress notes show that her symptoms are generally in the range of moderate to mild in severity.  The notes of Sandeep Varma show that he prescribed range of motion exercises for the claimant's osteoarthritis without narcotic pain medication. Sarcoidosis (or sarcoid) can be a debilitating condition, but the evidence does not establish that this condition has affected the claimant to the extent that it would prevent her from working.  The effects of the claimant's obesity is considered in combination with her other impairments, but the evidence does not clearly

---

sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

>  show the impact of it on her other impairments. Overall,
>  the medical evidence of record supports the finding that
>  the claimant is capable of performing light, unskilled,
>  simple, routine, repetitive work with only occasional
>  interaction with the general public at the substantial
>  gainful activity level.

(R. 249.)

"[T]he court must decide whether the [RFC] determination is supported by substantial evidence . . . . Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a 'mere scintilla.' . . . The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact . . . . The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner." Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citations omitted). The court will not second-guess the ALJ's decision where, as here, she identified the reasons for her RFC determination and supported her decision with substantial evidence. Falcon v. Colvin, No. 5:12-CV-1164 (FJS), 2014 WL 1312362, at *4 (N.D.N.Y. Mar. 31, 2014) ("So long as the ALJ properly exercises his discretion, the court must limit its review to whether substantial evidence supports the ALJ's decision; the court may not second-guess the ALJ's balancing of the evidence."); Marquez v. Colvin, No. 12 CIV. 6819 (PKC), 2013 WL 5568718, at *14 (S.D.N.Y. Oct. 9, 2013) (where "the ALJ conforms with applicable law and SSA regulations, and the ALJ's decision is supported by

substantial evidence, this court will not second-guess his judgment.").

Here, the ALJ provided a detailed explanation of her RFC determination and supported her decision with substantial evidence. There is no error.

IV. Conclusion

For these reasons, plaintiff's motion to reverse the decision of the Commissioner (doc. #19) is DENIED and defendant's motion to affirm the decision of the Commissioner (doc. #20) is GRANTED. The case is remanded for further proceedings in accordance with this opinion.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED at Hartford, Connecticut this 23rd day of March, 2017.

                                                                _____/s/_____
                                                                 Donna F. Martinez
                                                                  United States Magistrate Judge